GERTRUDE LOVINS v. CITY OF ST. LOUIS, a Municipal Corporation, MAX ZEMEL, JACOB W. RATZ and GENEVIEVE M. RATZ, Appellants. —84 S. W. (2d) 127.

Court en Banc, June 5, 1935.

*Chas. M. Hay, Edgar H. Wayman, Oliver Senti, Louis A. Mc-Keown* and *Forrest G. Ferris* for city of St. Louis.

*Green, Henry & Remmers* for Max Zemel, Jacob W. Ratz and Genevieve M. Ratz.

*Erwin F. Vetter* and *Hays & Dyott* for respondent.

HAYS, J.—This is an action for personal injuries alleged to have been suffered by the plaintiff in falling upon a sidewalk in the city of St. Louis. The fall is alleged to have been due to the dangerous condition of the sidewalk, owing to the negligence of the city and the abutting property owners who were joined with the city as co-defendants. From a judgment for $2500 rendered against all the defendants they have appealed.

The very statement of the nature and result of the case raises a serious inquiry in respect of this court's jurisdiction of the appeal which it is our duty *sua sponte* to investigate and determine. Viewed only from the standpoint of the amount of the judgment and of the city's being a municipal corporation, the appeal apparently should have gone to the proper Court of Appeals, just as in analogous appeals in actions brought by or against any other municipal corporation in this State, of which this court has invariably

declined to take jurisdiction. [Kansas City v. Neal, 122 Mo. 232, 26 S. W. 695; Parker v. Zeisler, 139 Mo. 298, 40 S. W. 881; Webb City Water Co. v. Webb City, 143 Mo. 493, 45 S. W. 279; Smith v. Sedalia, 228 Mo. 505, 128 S. W. 735; Louisiana v. Lang, 251 Mo. 664, 158 S. W. 1.] Even in cases of appeals involving prosecutions under ordinances of the city of St. Louis, but involving no constitutional question, this court has, from time to time without question, accepted appellate jurisdiction. So too, in cases where the city, though a party, is interested, if at all, only in its corporate capacity. [City of St. Louis ex rel. v. Ruecking Const. Co., 212 S. W. 887; Straub v. City of St. Louis, 175 Mo. 413, 75 S. W. 100; Ely v. St. Louis, 181 Mo. 723, 81 S. W. 168.]

This distinction regarding jurisdiction as between St. Louis and other municipalities has long been fostered; ever since 1885 and down to the present moment appeals in all classes of cases, without exception as to the amount involved, have been entertained by our court invariably, indiscriminately and without analysis or discussion. The rule as thus applied seems to have had its genesis in Freeman v. Quarry Co., 30 Mo. App. 362, to which cause the city of St. Louis is therein stated to be a party, and in which it was said (l. c. 363) by way of introduction and further on the question of appellate jurisdiction:

"As the question presented is one of first impression, and it may frequently occur, and is not free from doubt, we have concluded to sustain the motion (to transfer the appeal), so that upon a motion to remand filed in the Supreme Court, that court may have an opportunity to establish a precedent for the guidance of this court in similar cases."

There were no facts stated, nor was there any discussion. The court grounded the ruling thus:

"The Constitution originally provided for appeals from this court to the Supreme Court, in cases where a county or other political subdivision of the State is a party. The Constitution now provides that in all causes or proceedings reviewable by the Supreme Court, appeals shall lie from the trial courts directly to the Supreme Court, and the Supreme Court shall have exclusive jurisdiction of such appeals. It will be noticed that neither the original Constitution nor its amendment makes the final or exclusive appellate jurisdiction of the Supreme Court depend upon the fact that such political subdivision is the sole party to the cause, but that it is a party. This court, therefore, has no appellate jurisdiction of any cause now in which a political subdivision of the State is a party."

In this case it was attempted to follow the statute which required the transfer of cases pursuant to the constitutional Amendment of 1884. We are of the opinion that this interpretation placed upon the amendment, and followed subsequently, is too broadly inclusive

and that we should interpret it anew. In any endeavor to interpret the amendment in question it is proper to look to the previous state of the organic law and the conditions sought to be remedied by amendment.

For many years previously, and until the adoption of our present Constitution, there were existing in the State a number of judicial districts one of which was composed of the county of St. Louis, in which the city of St. Louis was located. The intermediate Courts of Appeal which were established in these districts eventually proved unsatisfactory and were abolished in 1870. Shortly thereafter the Legislature (Laws 1871), made provision for an amendment to the then Constitution increasing the number of Supreme Court judges from three to five. This amendment was adopted in 1872 and later incorporated in the Constitution of 1875.

The substance of the portions of Article VI, Section 12, of the original Constitution relevant to the establishment of the St. Louis Court of Appeals and the change made in its jurisdiction, is shown in the quotation from the Freeman case, supra. The amendment referred to, while depriving the St. Louis Court of Appeals of its intermediate appellate jurisdiction, placed that court in the same class and with exactly the same appellate jurisdiction with the Kansas City Court of Appeals and a third Court of Appeals for the establishment of both of which latter courts provision was made. The rule of appellate jurisdiction under discussion is not founded upon the constitutional provisions referred to, but upon other provisions of the amendment relating to the scheme and charter of St. Louis, as will later appear.

Notwithstanding the increase in the number of Supreme Court Judges in the early 70's the burden of this court was not appreciably lessened by the establishment of the St. Louis Court of Appeals, with its very limited territorial jurisdiction and its intermediate appellate jurisdiction. In 1882 relief, in a degree, was sought to be afforded by the appointment of three commissioners, who served until 1885. Meanwhile it became apparent that other means must be provided for a speedier determination of appeals through a different plan, a plan for a wider distribution of the same and for reducing the number of appeals coming to this court. Such was the end sought to be attained by the people in adopting the Amendment of 1884. The plan established thereunder is harmonious as a whole and in its several parts and, if permitted to do so, will operate equally and without discrimination throughout the State, and to that end the scheme embraced in the amendment must be construed and harmonized with the other provisions under discussion. The scheme and charter were formulated for the enlargement of the city territorially and for its operation, as thus enlarged, under the formulated plan.

■ They were adopted in October, 1876, and under the scheme the city of St. Louis occupies the dual relation to the State of both a county and a city. Though it is not a county in the ordinary sense as used in the Constitution, it is in a qualified sense a county, in that it is a legal or "political subdivision of the State." As such it performs the functions of a county. In all other respects, and predominantly, it is a city and not a county. [State ex rel. v. Finn, 4 Mo. App. 347; State ex rel. v. Bus, 135 Mo. 325, 327, 36 S. W. 636; State ex rel. v. Walsh, 69 Mo. 408.]

In the Finn case, supra, the St. Louis Court of Appeals determined that the office of sheriff of said city as reorganized pertains to the city in its capacity as a quasi county. That case contains a clear and extended analysis of said scheme as related to the newly organized territory of St. Louis, and points out the plainly separable and distinct functions and attributes possessed by the city in its dual capacity as a city proper and as a quasi county, and, among other things (l. c. 350), said:

*"Because the organization of this body as a city is pronounced and its features strongly marked, and because they thus reduced its attributes as a county into comparative insignificance,* it does not follow that the latter do not exist. That the body has some of the attributes of a county cannot be denied." (Italics ours.)

The city's "territory is also a subdivision of the State in which officers are elected to perform the functions of the State government as distinguished from those pertaining to municipal government. Those officers are in no sense municipal officers. Their designation as officers of the city of St. Louis refers to their territorial jurisdiction rather than to the governmental duties they perform. They are officers under the laws of the State and perform their duties within the city limits. The sheriff of the city of St. Louis is an officer in the same sense that a sheriff of a county is an officer of the county. He is no more a municipal officer than a sheriff of a county is an officer of a municipal corporation, the territory of which is included in his jurisdiction." [State ex rel. v. Bus, supra, l. c. 337. So also with regard to the collector, State ex inf. Barker v. Koeln, 270 Mo. 174, 192 S. W. 748; and to the Board of Aldermen, County Representatives and Senators, Finn case, supra.]

"The city was practically put in the position of a county for the purposes of executing the functions of government in that locality. As those functions were to be performed by city officers, the scheme and charter undertook, in the first instance, to prescribe how, and by whom, those duties should be discharged. *But matters of purely municipal and local concern the Constitution intended to commit to local self-government, which the peculiar provisions in regard to St. Louis were designed to authorize. It may not always be easy to determine what subjects are local and municipal and what are*

*not. That difficulty is not a new one.* But it is easy to determine in this case that the boulevard act deals with a subject of strictly municipal concern, for the principle of the decision of the Supreme Court in State ex rel. Kansas City v. Fields, 99 Mo. 352, 12 S. W. 802, is decisive of that proposition." [St. Louis v. Dorr, 145 Mo. l. c. 479, 41 S. W. 1094, 46 S. W. 976.] (Italics ours.)

The situation which the amendment was intended to alleviate was only partly remedied. In 1891 the number of Supreme Court Judges was increased from five to seven. In 1911 commissioners were provided, four in number; later (1919) increased to six and subsequently maintained at this number, except for a brief interval. Perhaps these considerations have induced a more alert watchfulness on the part of the members of the court with respect to matters jurisdictional. The case at bar presents such a question so strikingly that it is not to be overlooked. The inequality in the matter of appeal resulting from this court's retention of appeals in cases in which the city of St. Louis was a party, and which affected the city in its corporate capacity only, necessarily permitted such cases to displace on our docket, and delay in proportion to their number, cases rightfully brought to this court from various other localities in the State.

It remains now to apply the foregoing considerations to the case at bar. It seems altogether clear that this appeal could be retained only upon an anomalous, illogical theory predicated upon the fusing or coalescing of the distinct and separate aspects and attributes of the dual entity named city of St. Louis—to the obliteration of its corporate aspects, functions and duties—for the sole purpose of the appeal. Unquestionably the city's liability, if any, arose out of dereliction of duty cast upon the city in its corporate or ministerial capacity. Otherwise no liability could arise in the premises. The principle of law exempting counties from liability for the negligence of their governmental agents was laid down at an early day in Missouri in an action brought against St. Louis County by a widow to recover for the death of her husband, due to his falling, in the nighttime, from a bridge located on a public highway and being without guardrails. In denying a recovery by the widow, this court said, in part:

"The counties, as such, have no control over the repair of roads; they choose the county court and there their power ceases. . . . The county has no authority to give any direction or instruction to the county court as to the proper performance of its duty." [Reardon v. St. Louis County, 36 Mo. 555, 562.]

On the other hand, a city in the upkeep of streets and sidewalks does not act in its delegated governmental capacity. "But," as said in Ely v. City of St. Louis, supra, l. c. 730, "after the ordinance for the improvement of the street has been passed, and the city

undertakes the work of constructing or reconstructing the street as in the ordinance is required, then the city acts in its ministerial capacity, and if in that capacity it is guilty of negligence, to the injury of an individual it is liable. And so after the city has constructed the street or the sidewalk, and has thereby invited the public to use it, the city is bound to keep it in condition to be reasonably safe for use and is liable as for negligence if it fails to do so. [Moore v. Cape Girardeau, 103 Mo. 470; Hunter v. Weston, 111 Mo. 176.]''

The predominant charter and phase of St. Louis as a city in every corporate sense, to which reference was made in a preceding paragraph, is established and embraced only in the scheme set out in Sections 20, 21 and 22 of said constitutional amendment (R. S. 1929, pp. 130-131). Neither grant nor limitation of appeal appears therein. The sole and only section found in the amendment which *confers* upon St. Louis any rights, powers or functions as a quasi county or political subdivision of the State, is Section 23 (R. S. 1929, p. 131), of which the relevant part reads: ''The city, as enlarged, shall be entitled to the same representation in the General Assembly, collect the state revenue and perform all other functions in relation to the State, in the same manner, as if it were a county as in this Constitution defined.'' Under the maxim *ejusdem generis* ''all other functions'' must be interpreted as comprising functions of the same general nature as those specified in connection with that phrase, and the intended functioning means normal action in relation to the matter specified and others of the same nature. A county, as a governmental unit composed of the people resident within its prescribed territory, can only function concerning affairs committed to it as a governmental unit. It has nothing to do with the purely corporate or non-governmental affairs of the city as such and no functions concerning them to perform. The city of St. Louis, in so far as its county functions extend, is co-equal in that respect with all other counties in the State but not different therefrom. Constitutionally, while St. Louis in its entirety is of a dual nature, it is in no sense either a super-city proper or a super-county. It is the declared purpose of said Section 23 that the charter of the city shall always be in harmony with the Constitution and subject to the laws of the State.

Nor is there to be found in the amendment any basis to support the view that the amendment contemplated, or made provision for, any greater or different right of appeal in matters concerning the city's ministerial or non-governmental capacity, or its rights, powers, obligations or more especially duties, as a city proper. On the contrary, the matter quoted above constitutes in effect a limitation upon the city as an entirety in respect of appeal and confines the same by implication to county rights and functions.

If in this brief analysis of the scheme and charter provisions they are correctly interpreted, we are relegated to Sections 1, 2 and 3

of the amendment (R. S. 1929, p. 118) the substance of which has been given in a preceding paragraph herein and application thereof made.

From the foregoing considerations we are of the opinion that this court has no jurisdiction of this appeal, and that our previous decisions not in harmony herewith should no longer be followed. Accordingly, the cause is transferred to the St. Louis Court of Appeals.

PER CURIAM:—The foregoing opinion by HAYS, J., in Division One is adopted as the opinion of the Court en Banc. All concur, except *Coles*, J., who dissents.