THE CITY OF ST. LOUIS v. ESSEX INVESTMENT COMPANY, a Corporation, ET. AL., Appellants.—No. 40359.—204 S. W. (2d) 726.

Division Two, October 13, 1947.

*Tomasso & Seaton* and *William R. Schneider* for appellants.

*George L. Stemmler*, City Counselor, and *Charles J. Dolan*, Associate City Counselor, for respondent.

ELLISON, J.,—This is an appeal under Sec. 126 of the Civil Code, Laws Mo. 1943, p. 390, Sec. 847.126 Mo. R. S. A., from a special order after final judgment entered by the circuit court of the City of St. Louis on February 17, 1947, overruling a motion for a nunc pro tunc order theretofore recently filed by certain defendants in the above entitled condemnation suit, which was instituted by the city in 1920 for the widening of Olive Street and the appropriation of a strip of land on the south side thereof for that purpose. Some 165 abutting property owners were made defendants in the original suit. Of these only 22 joined in the motion and appealed from the adverse ruling thereon.

The nunc pro tunc order sought would have required the plaintiff-respondent city to pay the movants, severally, specified amounts aggregating $9,429.08, representing (or in place of) part of the ac-

cretions to a certain fund theretofore impounded in the registry of the court. The fund originally was $1,939,604, this being the aggregate net damages awarded to all the abutting property owners in the condemnation suit. The city paid it into court on January 29, 1925.

But 17 days thereafter certain of the then defendants obtained a provisional rule in prohibition from this court attacking the condemnation proceedings. About 15 months later, on June 4, 1926, the provisional rule was quashed by our mandate in State ex rel. Siegel v. Grimm, 314 Mo. 242, 284 S. W. 490. During that intervening time, as alleged in appellants' motion, the then circuit clerk had collected $68,000 interest on the fund from depositary banks. It is further charged that out of that money he paid nearly $15,000 as interest on the awards to some of the property owners; returned $17,486.64 to the city; and turned over to his successor in office only about $14,000. The motion does not say what became of the rest of the money.

At various times after the provisional rule in prohibition had been quashed the court ordered payments made to the various defendants, including the movants here now. And on June 1, 1931, final judgment was entered in the cause severally in favor of all of them, for the net amounts of their damages, including in one instance interest accredited on the award of a movant here. Interest was also allowed in the judgment to eleven other parties or parcels of land. Likewise, title to the land condemned was vested in the city. In due time a motion for new trial was overruled, and no appeal was prosecuted by any defendant.

. Nevertheless, on April 7 and 14, 1944, the defendants here filed motions for payment of the "balance" of their several awards. These were overruled on September 12, 1944, in a formal order, which recited that on January 8, 1935, when the successor circuit clerk took office, the former circuit clerk turned over to him $15,472.34, as being all the funds then remaining in the registry of the court; and that the successor circuit clerk thereafter paid out of said funds $1223.38 to clear checks issued by his predecessor, leaving $14,248.96 in his hands; and that out of that remaining sum the successor clerk on proper applications to and orders by the court, had paid out $14,028.96, leaving $220 in the fund, all of which was due on balances of unpaid awards (not interest), thereby exhausting the money in the registry of the court. No defendant appealed from this order.

Over two years later, on August 30, 1946, by leave of court, the appellant movants filed their present motion for a nunc pro tunc order requiring the city out of its own funds to pay back into the registry of the court a sum sufficient to satisfy their various interest claims; and that the circuit clerk be required to disburse this

money to them severally, a separate check to each movant for the amount of his claim, as specified in the motion, totalling $9,429.08.

The reasons assigned were that the former circuit clerk in 1925-6 had collected interest on the award fund in the registry of the court, as stated at the outset, and had paid $17,486.64 thereof to the city without their knowledge or consent; that they did not know the money so received by the city was not in the court registry when they had made their previous efforts to obtain the interest due them; and that "it was not until very recently that they learned that their said interest had thus been improperly paid to"—the city. The trial court simply overruled the motion without any finding of facts.

The first question to be determined is whether this court has jurisdiction of the appeal. The appellants have neglected to conform to our Rule 1.08(1) requiring the appellants' brief to contain "a concise statement of the grounds on which the jurisdiction of the review court is invoked." It cannot be because the City of St. Louis is a party, since in this instance the city is not involved as a county or political subdivision of the State, but only as a municipal corporation or city.[1] Neither can it be because the proceeding originally was a condemnation suit involving the title to the real estate, for that issue has long since been settled and the question is purely one of awards of monetary damages.[2]

If this court has appellate jurisdiction of the cause at all, it must be under Art. V, Sec. 3, Const. Mo. 1945, and because the amount in dispute exceeds $7500, exclusive of costs. The aggregate sum sought to be recovered is $9429.08, and does exceed $7500. But it is made up of the various amounts severally claimed by the 22 appellants, no one of which is more than $7500: in fact the largest single sum is $1111.78. Do these facts bring the case within our jurisdiction? We think they do, though the question is not free of difficulty.

While the movants here are, or were, defendants in the condemnation suit as a whole, yet they, as movants, occupied the position of plaintiffs or claimants in this particular proceeding. So regarding them, the following statement of law in 4 C. J. S., sec. 76g, p. 166, is apposite: "Where several plaintiffs seek one judgment for the enforcement of their several demands, such demands being founded upon the same liability, the aggregate amount is held to furnish the criterion of appellate jurisdiction in their behalf, and defendant may appeal, notwithstanding the interest of each plaintiff in the judgment would not be of sufficient amount to confer jurisdiction." See also 3 C. J., sec. 215, p. 415.

[1]Lovins v. City of St. Louis, 336 Mo. 1194, 1198-9(2, 3), 84 S. W. (2d) 127; Fischbach Brewing Co. v. City of St. Louis, 337 Mo. 1044, 1049(1), 87 S. W. (2d) 648, 649(1).
[2]City of St. Louis v. Franklin Bank (Mo. Div. 1), 98 S. W. (2d) 534(2); Mo. Power & Light Co. v. Creed, 325 Mo. 1194, 30 S. W. (2d) 605.

Similarly, it is stated in 2 Am. Jur. sec. 56, p. 885: "When property or money is claimed by two or more persons suing together, the test is whether they claim it under one common right, the adversary party having no interest in its appointment or distribution among them, or claim it under separate and distinct rights, each of which is contested by the adversary party. If it is claimed under one common right, the claims or interests may be united to confer appellate jurisdiction."

The same doctrine has been announced in at least two decisions of this court. Both were injunction suits brought by several neighboring property owners: the first as a class action to restrain a threatened nuisance; and the second to restrain a violation of the restrictive covenants in an underlying deed. They are: Aufderheide v. Polar Wave Ice Co., 319 Mo. 337, 356, 370, 383, 4 S. W. (2d) 776, 783, 793, 801; Rombauer v. Christian Church, 328 Mo. 1, 11(1), 40 S. W. (2d) 545, 550(2).

We think the facts bring the case within our jurisdiction, and therefore turn to the merits of the appeal. In our opinion the appellants' motion for a nunc pro tunc order in the circuit court wholly failed to state a cause of action, and was properly overruled. In effect it constituted an attempt to engraft an action for money had and received against the city, upon the condemnation proceeding which had gone to final judgment over 15 years earlier in 1931. In that proceeding the claims of the appellants were against money lawfully impounded in the registry of the court. But in the instant motion they sought to compel the city to pay its own money into court because the former circuit clerk had "improperly" paid to it (the city) part of the interest money he had collected in 1925-6. No such claim was ever asserted, or intended to be asserted and adjudicated, in the condemnation suit proper. In fact the appellants explain in their motion why it had not been asserted. It was because they had learned only "very recently" that the money had been paid by the former clerk to the city.

But the question is not what relief the appellants would have sought if they had known the facts. As said in Cordes v. Femmer (Mo. App.), 289 S. W. 13, 15(3): "The function . . . of a nunc pro tunc judgment is to enter that judgment which the court in effect rendered . . ." Or, as was ruled in Wiggins v. Perry, 343 Mo. 40, 48(2), 119 S. W. (2d) 839, 842(1), 126 A. L. R. 949, "Such an entry (nunc pro tunc) cannot be invoked to. . . . render a judgment different from that actually rendered, even though the judgment actually rendered was not the judgment the judge intended to render." And to justify it there must be corroboration aliunde in the court's records or papers. In this instance, obviously, the final judgment rendered in 1931 was the one the court intended

to render on the facts then known to the parties and presented to the court.

A great number of definitions of the legal phrase "nunc pro tunc" are collected in 28 Words & Phrases (Perm. Ed.) p. 981. Many of them say it signifies the making of a present record of something previously done; or doing now what the court intended to do at the time. Without any question the trial court here did not at the time intend to do, and did not do, what the appellants seek to have it do now. . An order nunc pro tunc on different facts and for different relief would have been improper. The order of the court overruling the motion is affirmed. All concur.