SANDERS *et al.*, *Plaintiffs in Error*, v. ST. LOUIS & NEW ORLEANS ANCHOR LINE.

1. **Jurisdiction:** DEFINITION. Jurisdiction, as applied to a state, signifies the authority to declare and the power to enforce the law, as well as the territory within which such authority and power may be exercised, and the jurisdiction of a state is co-extensive with its sovereignty.

Sanders v. St. Louis & N. O. Anchor Line.

2. ——— : MISSISSIPPI RIVER. The jurisdiction of the state of Missouri extends over the entire Mississippi river so far as the same forms a common boundary between it and the state of Illinois.

3. ——— : ———. The courts of Missouri have jurisdiction of an action by a resident of Missouri against a Missouri corporation for the death of a minor child caused by the negligence of defendant, where the accident happened on the Mississippi river and near the Illinois shore, between the two states.

4. **Construction of Statutes.** A prior construction of a law by the courts will be regarded, in the absence of any evidence of a different intent, as adopted by a reënactment of the law in the same terms as when so construed. This principle applies as well to the fundamental law as to other laws.

*Error to St. Louis City Circuit Court.*

REVERSED AND REMANDED.

*James P. Dawson* and *Dyer, Lee & Ellis* for plaintiffs in error.

The state of Missouri has jurisdiction and the laws of the state have their operation over the whole Mississippi river, from bank to bank thereof, so far as the same forms a common boundary between said state and the state of Illinois. *Swearingen v. Steamboat,* 13 Mo. 519.

*Given Campbell* for defendant in error.

(1) The Illinois enabling act, April 18, 1818, gives "the middle of the Mississippi" as its western boundary. And article one, of the Illinois constitution of 1870, adopts the same line as her western boundary. Hence the territorial jurisdiction of the state of Illinois extends to the middle of the Mississippi river, or *ad filium fluminis*, and the territorial jurisdiction of the state of Missouri extends to the middle of the main channel of said river. (2) The concurrent claim to jurisdiction as to steamboats has been abandoned by the

courts of Missouri since the decisions in *Taylor v. Trevor*, 4 Wall. 411; *Hine v. Trevor*, 4 Wall. 555.

BARCLAY, J.—The petition alleges that the minor son of one of plaintiffs was drowned, while in defendant's employ as a deck-hand on one of its steamboats, on the Mississippi river, between Illinois and Missouri, east of the main channel, while the boat was at the Illinois shore; that plaintiffs then were, and now are citizens of this state, and defendant is a Missouri corporation with its chief office in St. Louis; that the boat was engaged in navigating the river as a carrier of freight and passengers and that the death complained of was caused by certain negligence on the part of defendant.

It is conceded that the petition is otherwise sufficient if the place of injury is governed by Missouri law.

The circuit court sustained a demurrer to the petition. Plaintiffs have brought the case here by writ of error.

The decisive question presented is whether our statute, giving damages for injuries resulting in death (R. S., chap. 25), controls a case between citizens of this state, arising from facts occurring on the Mississippi near the Illinois shore, east of the main channel. The act of Congress of April 18, 1818, for the admission of Illinois into the Union, defined its western boundary as "the middle of the Mississippi river," provided that the state should have concurrent jurisdiction thereon with any state or states to be formed west thereof so far as the river formed the common boundary. 3 U. S. Stat. at Large, 428. Afterwards the same intention was expressed with greater clearness in the act of 1820, authorizing the admission of Missouri. It defined the eastern boundary of the state as "down and following the course of the Mississippi river in the middle of the main channel thereof," provided that "said state shall have concurrent jurisdiction on the river Mississippi

and every other river bordering on said state, so far as the said rivers shall form a common boundary to the said state and any other state or states now or hereafter to be formed and bounded by the same; such rivers to be common to both; and the river Mississippi and the navigable rivers and waters leading to the same shall be common highways and forever free," etc. 3 U. S. Stat. at Large, 546.

Missouri accepted the boundary thus defined and adopted the proviso as part of the first constitution. Const. 1820, art. 10, sec. 2. It has remained a part of our fundamental law to this day. Const. 1865, art 11, sec. 2; Const. 1875, art. 1, sec. 1.

The lawful extent of jurisdiction of different countries over the high seas, navigable waters and especially over inter-state rivers was a subject of serious differences among publicists and of historic conflicts of authority throughout the civilized world before the enactment of these acts of Congress relating to the Mississippi. The latter were intended, in part, to set at rest some of the debatable questions arising in relation to that subject, so far as concerned the new states mentioned. Congress did not see fit to assume the exclusive regulation of, and jurisdiction over public waters. Yet the peace and good order of the states bordering thereon demanded the extension of local laws and of authority to enforce them over such waters. So Illinois and Missouri were given jurisdiction upon the Mississippi and their boundary line was established as the middle of the main channel. The practical difficulty of locating, with reference to such a line, transactions requiring the application of state laws was, however, obvious to the law-makers. Rather than create the contingency of a failure of justice in any case on that account, Congress enacted the proviso giving this state "concurrent jurisdiction" with other states so far as the stream formed the boundary and declaring the river "*to be common to both.*"

"Jurisdiction," as applied to a state, signifies the authority to declare, and the power to enforce the law, as well as the territory within which such authority and power may be exercised. Those were its meanings in the language from which we derived the word and are its present meanings in our own. The jurisdiction of a state is co-extensive with its sovereignty. By conferring "concurrent jurisdiction," Congress intended to declare that (subject to the other laws of the United States) transactions occurring anywhere on that river, between the two states, might lawfully be dealt with by the courts of either according to its laws. Where a court of one state assumed jurisdiction in a particular case, it would be exclusive therein until relinquished. Missouri having accepted the terms of the act of Congress, her sovereignty extends to the limits sanctioned by that act. We have no doubt that her laws reach and control the facts here disclosed, affecting citizens of this state.

The same construction now announced was given to these acts by this court, in 1850, in *Swearingen v. Steamboat Lynx*, 13 Mo. 519. It was then held that our statutes governed a collision on the river between Illinois and this state and that it was immaterial on which side of the channel the injury took place. Since that ruling two revisions of our constitution have occurred. If it had been intended to restrict the jurisdiction of the state on the Mississippi within narrower bounds than those sanctioned by the act of Congress, that intention would have been expressed in the constitutional revisions since the decision above mentioned. But it was not. On the contrary the same language was reënacted at each revision. A prior construction of a law by the courts will be regarded (in the absence of any evidence of a different intent) as adopted by a reënactment of the

law in the same terms as when so construed.    This principle applies as well to the fundamental law as to other laws of a state.

The conclusion we reach is reinforced by the opinion of the supreme court of Iowa, construing precisely the same language applicable to that state.    That court held that the laws of Iowa apply to a criminal offense committed on the Mississippi, east of the main channel, on a boat moored to the Illinois shore,—a state of facts identical with that alleged in the case at bar.    *State v. Mullen*, 35 Iowa, 199.

The demurrer to the petition in the present cause should have been overruled.

The judgment is reversed and the cause remanded for further proceedings in conformity to this opinion. The other judges concur.