ALFRED RATHJEN, C. E. DOYLE, CLARENCE E. COLEMAN, V. B. VON-DIBER, C. A. VONTHUN, J. E. VONTHUN, BERT MCCOWELL, LUTHER TURNER, CARL GILLESPIE, W. ELWYN JONES, M. G. CONRAD, DON BECKLEY, ALFRED BECKLEY, LEE GAINER, H. L. TURNER, G. D. GARNER, ORIN F. SCHWANKE, JR., O. F. LAWSON, ROY COCKRUM, LEROY MILES, VINCIL W. FOREMAN, N. F. KEITH, CARL GRIFFITH and RICHARD GRIFFITH, Respondents, v. REORGANIZED SCHOOL DISTRICT R-II of SHELBY COUNTY, MISSOURI, CARL BELT, FRANK WAND, JOHN BRADLEY, JOHN MCEWEN, JUSTIN PEOPLES, STEVE BOWDISH, BOARD OF EDUCATION OF REORGANIZED SCHOOL DISTRICT R-II OF SHELBY COUNTY, MISSOURI, JAMES E. KIDWELL, Collector of Shelby County, Missouri, Appellants, No. 44787—284 S. W. (2d) 516.

Court en Banc, November 14, 1955.
Rehearing Denied, December 12, 1955.

*John M. Dalton,* Attorney General, and *John W. Inglish,* Assistant Attorney General, for James E. Kidwell, Collector of Shelby County, Missouri; *Hess & Collins* and *Paul D. Hess, Jr.,* for Reorganized

School Dist. R-II of Shelby County, Missouri, Carl Belt, Frank Wand, John Bradley, John McEwen, Justin Peoples, Steve Bowdish, Board of Education of Reorganized School Dist. R-II of Shelby County, Missouri, appellants.

*J. Andy Zenge, Jr., J. Patrick Wheeler* and *Rendlen & Rendlen* for respondents.

522

[519] STORCKMAN, J.—Two cases involving the same question were consolidated for argument on appeal. Both cases involve the legality of a school tax levy. In one case the trial court decided in favor of the legality of the tax, and in the other case the decision was against its validity. One opinion on the merits will be written. In neither case are the facts in dispute.

Briefly, the essential facts in this case are that at a special election in the defendant school district a proposition was submitted to

authorize an increase in the school levy for a period of one year. The revenue from the proposed levy was "to be used as a building fund for an elementary school and gymnasium." The amount of increase submitted was in excess of the constitutional limit of one dollar which could be levied by the defendant school district without voter approval. The proposal carried by more than a majority, but received less than two-thirds of the votes cast. Plaintiffs sued to enjoin the collection of the tax and to have the levy declared void. Defendants have appealed from the judgment in plaintiffs' favor.

Plaintiffs contend that § 11(c) of Art. X of the 1945 Constitution, as amended, requires the approval of at least two-thirds, rather than a simple majority, of the qualified electors voting thereon in order to authorize a school levy in excess of the constitutional limitation of one dollar for the purpose of erecting school buildings.

Section 11 of Article X in its present form was adopted November 7, 1950, as an amendment to the 1945 Constitution. The amendment was proposed by Senate Joint Resolution No. 3. Laws of Missouri 1949, pp. 642-644. The original § 11 of Art. X of the 1945 Constitution was repealed in its entirety and a new § 11 was adopted by the people; however, the only change or addition was in subsection 11(c). For convenient reference we will set out § 11(c), with the portion added by the amendment shown in italics. It is as follows:

"In all municipalities, counties and school districts the rates of taxation as herein limited may be increased for their respective purposes for not to exceed four years, when the rate and purpose of the increase are submitted to a vote and two-thirds of the qualified electors voting thereon shall vote therefor; *provided in school districts the rate of taxation as herein limited may be increased for school purposes so that the total levy shall not exceed three times the limit herein specified and not to exceed one year, when the rate period of levy and the purpose of the increase are submitted to a vote and a majority of the qualified electors voting thereon shall vote therefor; provided in school districts in cities of 75,000 inhabitants or over the rate of taxation as herein limited may be increased for school purposes so that the total levy shall not exceed three times the limit herein specified and not to exceed two years, when the rate period of levy and the purpose of the increase are submitted to a vote and a majority of the qualified electors voting thereon shall vote therefor*: Provided, that the rates herein fixed, and the amounts by which they may be increased, may be further limited by law; * * *."[1]

The plaintiffs contend that the words "for school purposes" in the amendment were adopted from the Constitution of 1875 and that they have an adjudicated meaning that does not include the erection

---

[1]Emphasis within quotations, here and elsewhere in the opinion, has been supplied by the writer unless otherwise indicated.

of school buildings. First let us examine the rule for which they contend. It is stated in Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 205 S.W. 196, 199, as follows: "The rule is firmly settled that the adoption in a later Constitution of the [520] words and *context* of another, which had been construed by a court of last resort, is presumed (in the absence of a contrary intention) to have been done to give the adopted words their adjudicated meaning."

First, it should be pointed out that the words in question could not have been adopted directly from the Constitution of 1875. The new constitution, as adopted by the people in 1945, did not use these words in § 11 and there was a lapse or interval of five years before the words were brought in by the 1950 amendment. There is in this case a lack of continuity which uniformly exists where the rule is applied. The point is that, by reason of the lapse of time, it cannot be logically claimed that these words were *adopted* from the 1875 Constitution any more than from some other source. With much more reason it could be said that the words were taken from § 5 of Art. IX of the 1945 Constitution, where they are used without any restricted or limited meaning being expressed. This will be further discussed later in the opinion.

Further, the presumption can have no application where the context of the amended section is materially different. The cases cited by the plaintiffs in support of the rule are ones in which provisions from previous constitutions have been reincorporated directly into a later constitution in their entirety, or without material variation. Take, for example, the case of Ludlow-Saylor Wire Co. v. Wollbrinck, supra, which was a suit to enjoin the enforcement of an income tax law on the ground that it violated § 4, Art. X, of the 1875 Constitution. This section in the 1875 Constitution was: "All property subject to taxation shall be taxed in proportion to its value." 1 V.A.M.S. 249. This same provision, without material change, was § 30, Art. I of the 1865 Constitution, 1 V.A.M.S. 118. In the 1820 Constitution it was Art. XIII, § 19 (1V.A.M.S. 96). The court held, since the context was the same, the adjudicated meaning of the word "property," acquired under the previous constitution, should not be disturbed.

The other case cited by plaintiffs is also a classic example of the application of the rule. In the case of Sanders v. St. Louis & N. O. Anchor Line, 97 Mo. 26, 10 S.W. 595, the court was concerned with the construction of Art. I, § 1, of the 1875 Constitution, which provided that "The State shall have concurrent jurisdiction on the river Mississippi, and every other river bordering on the State, so far as the said river shall form a common boundary to this State and any other State or States." This same provision, in almost identical language, was contained in the Constitution of 1865 (§ 2, Art. XI), 1 V.A.M.S. 145, and the 1820 Constitution (§2, Art. X), 1 V.A.M.S. 93.

The parties differ with respect to the application of the rule. The touchstone of this point, and perhaps the whole case, is whether the

"context" in § 11 of the 1945 Constitution, as amended, is the same as the context in which the words "for school purposes" were used in § 11 of the 1875 Constitution. Context is defined as: "The part or parts of a discourse preceding or following a 'text' or passage or a word, or so intimately associated with it as to throw light upon its meaning." Webster's New International Dictionary, 2d Edition.

The most significant and vital difference in the context of the two sections is the omission, in the new section, as amended, of all reference to the erection of buildings as a separate classification for voting purposes. The 1875 Constitution in effect provided that the annual rates for school purposes might be increased to an amount not to exceed $1.00 on the condition that a majority of the votes were cast in favor of the increase, except that for the purpose of erecting public buildings in school districts, the rate of taxation may be increased upon a two-thirds vote.

The most vital part of § 11, Art. X of the 1875 Constitution that was abandoned entirely and not carried over into the new constitution or the 1950 amendment, reads as follows (1 V.A.M.S. 251): *"For the purpose of erecting public buildings in counties, cities or school districts, the rate of taxation herein limited may be increased when the rate of such increase* [521] *and the purpose for which it is intended shall have been submitted to a vote of the people, and two-thirds of the qualified voters of such county, city or school district, voting at such election, shall vote therefor."* There is no counterpart in the 1945 Constitution, as amended, of the above provision separately classifying the purpose of levying a tax for the erection of school buildings.

If § 11 of the 1875 Constitution had not expressly created the exception with respect to the vote necessary to create a tax for the erection of school buildings, or if such provision had been repealed, there would have been no occasion for the exclusion of the erection of school buildings from the term "school purposes" generally. See the first sentence of § 11 which gives the broad grant of power to tax "for school purposes." This is further evident from the statement in the case of State ex rel. Brown v. Wabash, St. L. & P. Ry. Co., 83 Mo. 395, which appears to be the first case construing § 11, Art. X, of the 1875 Constitution as it relates to school taxes. The genesis of the classification ruling is probably in that case, wherein the court states, l.c. 397: "The plaintiff contends that all taxes relating to schools, school buildings and indebtedness on account of schools and school buildings are taxes for school purposes and *but for the constitutional classification of these different taxes into taxes for school purposes, taxes for the purpose of erecting public buildings and taxes to pay an existing indebtedness there would be plausibility in the argument."*

The purpose of erecting school buildings was expressly carved out and separated from other school purposes in the old constitution.

The context is not the same in the new section, and that removes the prop that held the meaning up. Obviously, affirmative negation is not necessary, and an intention contrary to the presumed use may be apparent from all the circumstances.

The construction of the old section resorted to over the years related primarily to what items should go into each of the two classes established by § 11 of Art. X of the 1875 Constitution. The plaintiff taxpayers cite a number of cases, all decided while the 1875 Constitution was in effect, in support of their contention that the words "for school purposes" do not include the erection of new buildings or classrooms. It might be questioned whether actually there was, under the 1875 Constitution, a *construction* such as that for which the plaintiffs contend. In referring to this matter, it was stated in the case of Harrington v. Hopkins, 288 Mo. 1, 231 S.W. 263: "The language of the section just quoted is too plain to need construction." The Harrington case as well as Jacobs v. Cauthorn, 293 Mo. 154, 238 S.W. 443, and State ex rel. Marlowe v. Himmelberger-Harrison Lumber Co., 332 Mo. 379, 58 S.W.2d 750, all involved the question of whether alterations, repairs, improvements or the furnishing of existing buildings were included within the term "erecting buildings," and it was held they were not. In Hudgins v. Mooresville Consol. School Dist., 312 Mo. 1, 278 S.W. 769, it was held that the expense of equipping new buildings could be included in the cost thereof and was not a school purpose which must be paid out of annual revenue. In Peter v. Kaufmann, 327 Mo. 915, 38 S.W.2d 1062, an attack was made upon a bond issue levied for the purpose of completing a schoolhouse. This was held to be a separate and distinct tax and a valid levy. The case of Russell v. Frank, 348 Mo. 533, 154 S.W.2d 63, held that a levy could not be made for payment into the building fund when no buildings were contemplated by the funds to be later transferred to the fund for the payment of general operating expenses of the school system. This was held void as an obvious evasion of the limits imposed by the constitution.

In each instance where the term "for school purposes" has been construed not to include building purposes, it has been because of an express constitutional or statutory provision. For instance, the case of Chicago & A. R. Co. v. People ex rel. Wood, 163 Ill. 616, 621, 45 N.E. 122, 123, twice cited in Missouri cases, is based upon [522] an Illinois statute which authorizes a tax annually upon the taxable property of the district, of "not to exceed two per cent. for educational, and three per cent. for building purposes." In the State of Georgia there is no constitutional or statutory classification, and in the case of Board of Commissioners of Roads & Revenues of Twiggs County v. Bond, 203 Ga. 558, 47 S.E.2d 511, 512, the court held: "On the other hand, the term, 'for educational purposes,' is broad enough to cover all things necessary or incidental to the furtherance of education,

which would include the construction of schoolhouses, the only limitation being the one fixed by the Constitution itself, to wit, that the levy of a direct tax for educational purposes should not exceed fifteen mills.''

▊ The ''constitutional classification'' has been abandoned in the new section, as amended, and in this changed situation the controlling rule is: ''With the disappearance of the reason, the thing disappears; when the reason for a rule of law fails, the rule fails. *When the reason for a definition of a legal term ceases, the definition is obsolete.*'' State ex inf. Norman v. Ellis, 325 Mo. 154, 28 S.W.2d 363, 367. The reason for the definition was that the 1875 Constitution expressly required it. That reason having been removed by the enactment of § 11 of Art. X of the 1945 Constitution, as amended, the previous definition became obsolete.

In the case of State ex rel. Crow v. Hostetter, 137 Mo. 636, 39 S.W. 270, it was contended that only males were eligible for the office of clerk of the county court. The basis of this contention was that the constitution provided that a public officer must be a citizen of the United States and that he must have resided in the state for one year ''next preceding *his* election or appointment.'' The court pointed out that the omission of limiting words was significant, and stated, on page 649:

''The dropping of the word 'male,' in describing the qualifications for such offices, has value as a guide to the legislative purpose in enacting the present law on this subject. Can there be any doubt as to the intended effect of such a change of the statute on the particular question before us?

''It is always allowable in interpreting statutes to consider the prior law as compared with the present, in endeavoring to reach the true intent of the legislature which, when found, is the spirit of the law that the courts should enforce.''

▊ Plaintiffs are, in effect, asking us to imply an exception where none exists under the express terms or plain intendments of the constitutional provision. The law is well settled that it is the duty of the court, in construing the constitution, to give effect to an express provision rather than an implication. In the case of State ex rel. Scott v. Dircks, 211 Mo. 568, 111 S.W. 1, the question involved was the eligibility of the relator to serve as sheriff where the constitutional provision with respect to tenure had been amended. The court refused to construe an exception where none was expressed, applying this rule (111 S.W., l.c. 4): ''But, however that may be, it must be borne in mind that, in endeavoring to reach the meaning of the provision under consideration, there is a well-settled rule of interpretation, to wit: 'Where no exceptions are made in terms, none will be made by mere implication or construction.' ''

528

■ The fact that a word, term or phrase in a different context and under different circumstances may have a changed meaning is well demonstrated by the ruling in Towne v. Eisner, 38 S.Ct. 158, 159, wherein Mr. Justice Holmes stated: "But it is not necessarily true that income means the same thing in the Constitution and the Act. A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."

■ There are other differences in the context, but the ones we have pointed out [523] are sufficient without more to distinguish the present use of the words from the use in the 1875 Constitution. Therefore, it cannot be presumed that the words "for school purposes" were adopted from the former constitution so as to foreclose an inquiry into their meaning as used in the amended section.

■ If construction is needed, the court should approach the construction of § 11 of Art. X of the 1945 Constitution, as amended, from the standpoint of accepted rules of construction, the compulsion of the previous definition having been removed. As stated in Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920, 931: "It is of course fundamental that where the language of a statute is plain and admits of but one meaning there is no room for construction." This rule applies with equal force to constitutional provisions.

If there is a conflict or ambiguity in the section that requires construction, it can only arise between the term "school purposes," as used in the amendment, and the term "respective purposes" appearing in the first part of § 11(c), which reads: "In all municipalities, counties and school districts the rates of taxation as herein limited may be increased for their *respective purposes* * * *." The word "respective," as used in this connection, means "relating to particular persons or things, each to each; particular; several; as, their respective homes." Webster's New International Dictionary, 2d Edition. Obviously, the use of the word "respective," in this instance, is to indicate a several, and not a joint, purpose. It is used for convenience to avoid repeating the words municipal, county and school or school district as modifiers of "purposes." We consider the meaning to be the same as if the drafters of the provision had stated "in all municipalities, counties and school districts, the rate of taxation as herein limited may be increased for *municipal, county and school district (or school) purposes*, respectively * * *." The only question that can be raised is whether the term "school district purposes" should be construed to have a meaning that includes new buildings, while the term "school purposes" should be construed to have a limited meaning exclusive of building purposes. Certainly there is no distinction or classification expressly created, nor do we believe that any can reasonably be read into the section by implication. Such a construction would be strained and fanciful.

█ Neither "respective purposes," "school district purposes" nor "school purposes" are technical words or phrases. Technical words are those "of or pertaining to the useful or mechanical arts, or any science, business, profession or sport, or the like." Webster's New International Dictionary, 2d Edition. Therefore these terms must be given their plain or ordinary meaning unless such construction will defeat the manifest intent of the constitutional provision. State ex inf., Rice ex rel. Allman v. Hawk, 360 Mo. 490, 228 S.W.2d 785, 788.

█ We cannot agree that it is necessary, as plaintiffs contend, to treat the term "school purposes" as surplusage if it does not have the meaning for which they contend. It might as well be contended that the phrase "respective purposes," occurring in §§ 11(b) and 11(c), is surplusage in one or both places it is used. Unless limited by the constitution, the legislature could extend to school districts the power to tax for purposes beyond its usual realm. The limitation results only because the constitution so provides. There could be no objection if the constitution permitted by failure to restrict or even provided that school districts could tax, for example, to build roads and bridges in the district. It appears to be good draftsmanship and entirely logical to mention "respective purposes" and "school purposes," as they occur in the section, in order to make it clear that the intent is to keep each political subdivision in its own traditional field.

█ Nor can we find any logical basis for the contention that building purposes [524] are excluded by the majority requirement and included in the two-thirds provision. With equal logic any other item of educational purpose might be excluded or included. We consider that the limitations in the amendment of a rate "not to exceed three times" the primary constitutional limit, and the period of "not to exceed one year" as to duration of the levy, indicate an intent to include all purposes in each instance. These added safeguards or limitations are designed to compensate for lowering the required majority.

█ Assuming, however, that there is "room for construction," there are well-recognized rules for the guidance of the court. "The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it." 16 C.J.S. 51, § 16. This is the rule in Missouri: Graves v. Purcell, 337 Mo. 574, 85 S.W.2d 543; State ex rel. Aquamsi Land Co. v. Hostetter, 336 Mo. 391, 79 S.W.2d 463, 468; State ex inf. Norman v. Ellis, 325 Mo. 154, 28 S.W.2d 363; State ex rel. Lashly v. Becker, 290 Mo. 560, 235 S.W. 1017, 1020; State v. Adkins, 284 Mo. 680, 225 S.W. 981. In this instance the framers are the General Assembly of Missouri, since § 11 in its entirety was repealed and a new section adopted in lieu thereof, as shown by Senate Joint Resolution No. 3. Laws of Missouri 1949, p. 642.

■ Consideration should be given to the purpose of the constitutional provision in question and a reasonable interpretation should be made of the language used. State ex rel. Lashly v. Becker, supra. The language used in § 11 (c), as amended, presents no obvious conflict. The words ''school purposes'' are general words and the meaning. of the term must be construed broadly and in accordance with their plain and ordinary meaning, unless some good reason, consistent with the purpose of the constitutional provision, otherwise appears.

■ A principle of construction that should be kept in mind is that while the construction of constitutional provisions should be neither liberal nor strict, it is quite generally held that in arriving at the intent and purpose the construction should be broad and liberal rather than technical, and the constitutional provision should receive a broader and more liberal construction than statutes. State ex rel. Lashly v. Becker, supra; 16 C.J.S. 54, § 16; 11 Am. Jur. 670-671, § 59. The reason is, a constitution is expected to be effective over a longer period of time, and its method of revision or amendment is more cumbersome than the legislative process.

■ The unfettered term, ''school purposes,'' connotes an all-inclusive meaning and there are numerous circumstances that support that interpretation. The amendment proposed by Senate Joint Resolution No. 3 used the term ''school taxes'' in its title, which indicates an intent that all kinds of school taxes be embraced in the language used. The title reads (Laws of Missouri 1949, p. 642) : ''Repealing and reenacting Section 11, Article X, Missouri Constitution, and in addition providing *school taxes* may be increased not to exceed three times constitutional limitation by majority vote for period of two years in districts in cities of 75,000 or over and one year in other school districts.'' This throws light upon our problem and may be considered according to the rule stated in 16 C.J.S. 65, § 23, as follows: ''Although the title to an act of the legislature proposing an amendment to the constitution is not necessary to the validity of the act, nevertheless such title may be resorted to when construing and interpreting the section of the constitution to which it relates.'' ''School taxes'' are not distinguishable from taxes ''for schools,'' and this latter term was held to include ''all sorts and kinds of taxes.'' See St. Louis & S. F. R. Co. v. Gracy, 126 Mo. 472, 29 S.W. 579, wherein the court stated (126 Mo., l.c. 481) : ''It is evident that the words 'for schools,' in such a connection, were not employed with reference to the details of any scheme of taxation * * *, but, in a wider, larger sense, to describe all sorts and kinds of [525] taxes, sanctioned by the constitution and laws, for the support of schools.''

■ The term ''school purposes'' appears in § 5 of Art. IX of the 1945 Constitution, as originally adopted. This section of the article on education relating to the public school fund provides: ''The proceeds of all certificates of indebtedness due the state school fund,

and all moneys, bonds, lands, and other property belonging to or donated to any state fund for public *school purposes"* shall be paid into the state treasury and invested and preserved as a public school fund, the annual income of which shall be faithfully appropriated "for establishing and maintaining free public schools." The 1875 Constitution (Art. XI, § 6) had used the phrase, "for purposes of education," but this was changed to "public school purposes" in Art. IX, § .5, of the 1945 Constitution. One of the rules for interpreting the meaning of words in a constitution is that: "In the absence of a contrary intention, the same meaning attaches, or is presumed to attach, to a given word or phrase repeated in a constitution, wherever it occurs therein." 16 C.J.S. 60, § 19(b). The fact that the term "school purposes" was in the 1945 Constitution at the time the 1950 amendment was adopted indicates that we should look to the meaning as there used rather than the meaning claimed to have been intended in a former constitution which had been superseded more than five years previously.

The report of the constitutional convention committee indicates an intent to use the term in a broad sense. The committee on Taxation, Levy, Assessment and Collection, No. 10 of the 1943-1944 Constitutional Convention, considered and reported on the section in question. The majority report of this committee, in its explanatory comment or "Remarks" on § 11 (File No. 19, pp. 8, 11), refers to "school purposes." It states: "Experience has demonstrated the need of somewhat higher rates for *school purposes,* and this has been taken care of in the new Section." The majority report used the term "respective purposes" in the text of the section, and in that form it was adopted by the convention. The minority report employs the term "school purposes" which also shows an intent to get away from the distinction and classification of the section of the former constitution.

It should be carefully noted that the amended portion of the section follows with meticulous care the language used in the original provision for increase of the levy. For instance, both provisions require that "the rate *and purpose of the increase"* must be submitted to the voters. Here again, there is no limitation on the purpose of the increase when there was an opportunity to limit the purposes if the framers (the legislature) had so desired. If the General Assembly, in redrafting § 11 for reenactment, had intended to limit the application of amendment to "the usual and ordinary expenses of maintaining and operating schools" or "school district purposes excluding the erection of buildings," it could have easily clarified the situation by the use of some such expression. In order to give the words the construction contended for by the plaintiffs, we must assume that the General Assembly used a devious and round-about method of expression where a plain, simple, intelligible way was available to express the

meaning for which the plaintiffs contend. See State ex rel. Crow v. Hostetter, 137 Mo. 636, 39 S.W. 270, wherein the court stated (137 Mo., l.c. 648): "If the lawmakers had regarded sex as determining eligibility, it seems to us that they would have expressed themselves plainly to that effect, as they did in former years. They have so expressed themselves in other statutes; * * *."

On each occasion that the General Assembly had an opportunity to express itself it treated "school purposes," "district purposes" and "respective purposes" as synonymous. That the legislature did not intend to limit the meaning of the words "school purposes" is evident from its activities in connection with implementing both the 1945 Constitution and the 1950 amendment as regards § 11. The titles to both the 1945 Act and the 1951 Act used the term "school purposes." The 1945 Act, after reciting the sections to be repealed, stated: "all relating [526] to taxation for *school purposes,* and to enact in lieu of said sections three new sections relating to the same subject * * *." Laws of Missouri 1945, p. 1629. Senate Bill 208, approved January 25, 1946. Senate Bill 5, approved on March 15, 1951, after the 1950 amendment, in its title stated this was an act "to amend Section 165.080, Revised Statutes of Missouri 1949, relating to increases in tax levies for *school purposes* * * *." Thus, in each instance the General Assembly treated the subject matter of these two acts all as "school purposes"—the first being before it had proposed the 1950 amendment.

Furthermore, the resulting statute, which is now § 165.080, RSMo 1949, draws no distinction between the purposes for which a two-thirds vote is required and those purposes for which a simple majority is sufficient. Plaintiffs undertake to connect the term "necessary majority" with the *purposes* for which school taxes can be voted. There is nothing in the language of the constitution or the statute to encourage such a belief. It is plain that the words "necessary majority" do not relate to the purpose of the tax, but to the amount of the tax and its duration. A school tax voted by a two-thirds majority may be in an unlimited amount and may be effective for not to exceed four years. A tax carried by a simple majority, however, must be limited to three times basic limit of one dollar and can be effective for one year only. This statute and the manner in which it was enacted further confirms the fact that the only distinction or classification made by the legislature related to the amount of the increase and the period for which the levy was voted.

A contemporaneous legislative construction is entitled to and will be given serious consideration by the court in determining the meaning of an ambiguous constitutional provision, both as a matter of policy and also because it may be presumed to represent the true intent of the instrument. State ex rel. City of Carthage v. Hackmann, 287 Mo. 184, 229 S.W. 1078, 1081; State ex rel. O'Connor v. Riedel, 329

Mo. 616, 46 S.W.2d 131; State ex rel. Wayland v. Herring, 208 Mo. 708, 106 S.W. 984. The General Assembly, in framing the 1950 amendment and the act to implement it, as well as the 1945 constitutional provision, must be presumed to have known the problems presented which indicated the desirability of an amendment, and to have drawn the amendment in a way to prevent or remedy the difficulty. Koontz v. City of St. Louis, (Mo.), 84 S.W. 2d 131; Lovins v. City of St. Louis, 336 Mo. 1194, 84 S.W.2d 127; State ex rel. City of Boonville v. Hackmann, 293 Mo. 313, 240 S.W. 135; State ex rel. City of Carthage v. Hackmann, 287 Mo. 184, 229 S.W. 1078, 1080; 16 C.J.S. 52, 53, § 16.

The General Assembly, unless restrained by the constitution, is vested, in its representative capacity, with all the primary power of the people. Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 205 S.W. 196, 197. In view of this fact, great deference should be had for the fact that the legislature made no distinction between "school purposes" and "district purposes" at any time when dealing with this section. In considering contemporaneous legislative construction, this court, in the case of State ex rel. O'Connor v. Riedel, supra, held (46 S.W.2d, l.c. 134): "Though not conclusive, such interpretation is entitled to great weight and should not be departed from unless manifestly erroneous."

Also, we have been reminded of the well-established rule of construction that an interpretation of a statute by public officers charged with its execution, while not controlling upon the courts, is entitled to consideration. State ex rel. Barrett v. First Nat. Bank of St. Louis, 297 Mo. 397, 249 S.W. 619; Automobile Gasoline Co. v. City of St. Louis, 326 Mo. 435, 32 S.W.2d 281, 283. It is claimed by the school districts that the commissioner of education and others in his department interpret the term "school purposes" as including erection of buildings. However, we do not think the matter of such interpretation is properly before us, and we have [527] reached our conclusions apart from any such consideration.

Plaintiffs also complain of the representations that were made or facts that were not disclosed by the proponents during the campaign for the adoption of the 1950 amendment. Such a construction, even if it were proven, which it is not, is entitled to no consideration. In the case of State ex rel. Russell v. State Highway Commission, 328 Mo. 942, 42 S.W.2d 196, 202, this court considered public utterances of the advocates of an amendment to the constitution. This court, after referring to an Arkansas case that "disregarded altogether" evidence of this sort, held, l.c. 202: "Without going that far in this case, and not forgetting the return alleges the people did believe and rely on the statements made to them, we hold it is neither conclusive nor persuasive evidence that the particular clause of the amendment

here under consideration has the particular meaning respondent attributes to it."

Unless the meaning of the terms employed is not clear, questions as to the wisdom, expediency or justice of the constitutional provision should play no part in the construction thereof. Further constitutional restrictions should not be held to apply if any reasonable doubt as to their repugnance can exist in the judicial mind. Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 205 S.W. 196. There is nothing inherently wrong in permitting the voters in a school district to tax themselves by a majority vote in a limited amount for a limited time for any educational purpose. The rule of the majority is so much a part of our political system and, in fact, of our way of life, that it should not be denied to the people unless the law clearly so provides. Tanner v. Lindell R. Co., 180 Mo. 1, 79 S.W. 155, 158. Long term levies and bonded indebtedness are covered by other constitutional provisions. An annal levy for building purposes would seem to present no more cause for alarm than an annual levy for maintenance and operations. Both are vitally necessary for the successful operation of our school system.

We should keep in mind that § 11(c) gives the legislature the power to further limit the rates fixed by the constitution and the amounts by which they may be increased. This indicates an intent to vest the power of further safeguarding the people against their own acts, so to speak, in the General Assembly rather than in the courts. This fact should contribute to a liberal construction of the constitutional limitations.

We believe, and so hold, that the only reasonable and harmonious construction of the term "school purposes" is that it includes within its meaning construction of a building or additional classrooms. Accordingly the judgment of the trial court is hereby reversed and the cause is remanded with directions to enter judgment in favor of the defendants.

*Leedy, C.J., Hollingsworth* and *Hyde, JJ.,* concur; *Eager, J.,* dissents in separate opinion; *Westhues, J.,* and *Ruark, Special J.,* dissent, and concur in separate dissenting opinion of *Eager, J.*

EAGER, J. (dissenting).—A majority opinion and a dissenting opinion were filed in this case on June 13, 1955. Thereafter the court of its own motion granted a rehearing; supplemental briefs were filed and the case has been reargued.

By stipulation of all parties this case was consolidated on appeal with the case of State of Missouri ex inf. J. Patrick Wheeler, Pros. Atty., ex rel. John Berhorst et al., Appellants vs. Reorganized School District R-VI in Lewis County, Missouri et al., Respondents, No. 44,689, 365 Mo. 545, 284 S.W. 2d 535, which is an appeal from the Circuit Court of Lewis County. The cases involve the same question

and only one opinion on the merits will be written. We consider here, however, the contentions made by counsel in both cases, upon the original submission and upon the rehearing as well. Both suits are actions seeking, by injunction, to declare certain school district levy increases to be void. The parties will be referred to in this [528] opinion as plaintiffs (respondents here) and defendants (appellants here). This court has jurisdiction primarily because the case necessitates a construction of the Constitution of the State of Missouri.

There is no controversy concerning the facts. As shown both by the pleadings and by an agreed statement they are as follows: On July 20, 1954, pursuant to notice, a special school election was held in the defendant school district, at which election a proposition was submitted to authorize an increase in the school levy of one dollar and forty-five cents ($1.45) per one hundred dollars of assessed valuation, for a period of one year, to be used as a building fund for an elementary school and gymnasium; the $1.45 so referred to was in excess of the constitutional limit of one dollar, which may be levied without a vote, and also in excess of a previous levy increase of fifty cents which had been approved on April 6, 1954. At the election the proposal received 214 affirmative votes and 160 negative votes; in other words, it received a favorable majority, but not two-thirds of the ballots cast. Following this election the defendant members of the Board of Education certified that the proposed levy increase had been approved, caused a levy to be made accordingly, and the defendant County Collector extended the levy of the tax upon the tax books against all assessed real and personal property in the school district. This suit was instituted at the relation of various residents and taxpayers of the school district to enjoin the collection of the tax and to declare the levy and its certification void. The trial court heard the cause and granted the injunction, holding that a two-thirds vote on the proposition was necessary, and that the proposed levy and tax were void.

The legal question in the case may be more simply stated than determined. It is asserted by plaintiffs (and, of course, denied by defendants) that no school levy increase *for the purpose of erecting new buildings* may be adopted except by a two-thirds vote of the qualified electors voting thereon. The question primarily involves a construction of § 11(c) of Article 10 of the Constitution of Missouri, as adopted in 1945 and amended November 7, 1950, by vote of the people upon Resolution submitted by the General Assembly, which Resolution has now become §§ 11(a) to 11(f), inclusive, of Article 10. Section 11(b) prescribes the limits of taxation which may be imposed without a vote. We set out at this point § 11(c) as originally adoped by the 1943 Constitutional Convention, as follows:

"In all municipalities, counties and school districts the rates of taxation as herein limited may be increased for their respective purposes for not to exceed four years, when the rate and purpose of the

increase are submitted to a vote and two-thirds of the qualified electors voting thereon shall vote therefor; provided, that the rates herein fixed, and the amounts by which they may be increased, may be further limited by law; and provided further, that any county or other political subdivision, when authorized by law and within the limits fixed by law, may levy a rate of taxation on all property subject to its taxing powers in excess of the rates herein limited, for library, hospital, public health, recreation grounds and museum purposes."

The material part of the amendment adopted in 1950 (and now appearing immediately after the first semicolon in original § 11(c), supra), is as follows:

"provided in school districts the rate of taxation as herein limited may be increased *for school purposes* so that the total levy shall not exceed three times the limit herein specified and not to exceed one year, when the rate period of levy and the purpose of the increase are submitted to a vote and a majority of the qualified electors voting thereon shall vote therefor; provided in school districts in cities of 75,000 inhabitants or over the rate of taxation as herein limited may be increased for school purposes so that the total levy shall not exceed three times the limit herein specified and not to exceed two years, when the rate period of levy and the purpose of the increase are submitted to a vote and a majority of the qualified electors voting thereon [529] shall vote therefor"; (The emphases shown here and elsewhere on the words "for school purposes" and "for building purposes" have been supplied.)

The basic question involved here is whether this amendment of 1950 authorized school districts to increase taxes above the constitutional limits of § 11(b) of Article 10, for the purpose of erecting new buildings, by a bare majority vote, subject to the other limitations of the amendment; or, expressed in another way and perhaps more simply, whether *"for school purposes,"* in § 11(c), Article 10, as amended, includes the erection of new buildings. The trial court found that under Article 10, § 11(c), as amended, and the provisions of the applicable statutes, the levy increase for *building purposes* was not properly and legally adopted by a simple majority, that a two-thirds vote was required, and that the levy and the extension of the tax were void; and the various defendants were enjoined from enforcing the levy and from collecting the tax.

In so far as we have found, the term *"for school purposes"* has not previously been construed or considered by the courts in connection with § 11(c), Article 10 of the present Constitution. It was considered several times as it appeared in Art. X, § 11 of the Constitution of 1875. Since we shall refer to some of those opinions, we set out here excerpts of the material parts of that section, as follows:

"* * Provided, the aforesaid annual rates for school purposes may be increased, in districts formed of cities and towns, to an amount not

to exceed one dollar on the hundred dollars valuation, and in other districts to an amount not to exceed sixty-five cents on the hundred dollars valuation, on the condition that a majority of the voters who are taxpayers, voting at an election held to decide the question, vote for said increase. For the purpose of erecting public buildings in counties, cities or school districts, the rate of taxation herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and two-thirds of the qualified voters of such county, city or school district, voting at such election, shall vote therefor * * *.''

In considering that section of the 1875 Constitution, the Missouri courts held several times that there were inherent distinctions between levy increases for *"school purposes"* and levy increases for the erection of new buildings (or, we may say, *"building purposes"*), that the two types of increases required different votes, and that the constitutional limitations on the amount of increases ''for school purposes'' did not apply to levy increases for building purposes. Probably these decisions were based upon the distinction expressly made in the Constitution, but whatever the source, the courts emphatically recognized the distinction. To this effect see: Peter v. Kaufmann, 327 Mo. 915, 38 S. W. 2d 1062; Hudgins v. Mooresville Consol. School Dist., 312 Mo. 1, 278 S.W. 769; Harrington v. Hopkins, 288 Mo. 1, 231 S.W. 263, 265; Jacobs v. Cauthorn, 293 Mo. 154, 238 S.W. 443; Russell et al. v. Frank et al.,—Banc, 348 Mo. 533, 154 S.W. 2d 63; State ex rel. Brown v. Wabash, St. L. & Pac. Ry. Co., 83 Mo. 395, and State ex rel. Setzer v. Wabash, St. L. & Pac. Ry. Co., 90 Mo. 166. In the case of Peter v. Kaufmann, (38 S.W. 2d at l.c. 1066, 1067), this court said:

''Section 11, Art. 10, of the Constitution places limitations on the annual rates of taxation which can be levied for school purposes, which term is construed to cover all the usual and ordinary expenses of maintaining and operating schools. Hudgins v. Consolidated School District, 312 Mo. 1, 12, 278 S.W. 769. But, as we have seen, the only limitation on the rate of taxation for buildings is that such rate and the purpose thereof shall be submitted to a vote of the people of the district and receive the sanction of a two-thirds majority of those voting. Therefore, no building tax, whatever the rate, which has received a two-thirds majority vote of the voters of the district at a legally called election, [530] can be held violative of the Constitution. A limitation of 100 cents per $100 valuation is fixed by statute. Section 11183, Rev. St. 1919. A levy for building purposes and erection of buildings is a separate and distinct tax not included in the term 'school purposes' and not subject to the limitation as to amount imposed by the Constitution. Hudgins v. Consolidated School District, 312 Mo. 1, 12, 278 S.W. 769.''

In fact there does not seem to be any real controversy between the parties here as to the distinction so recognized under the 1875 Constitu-

tion. Counsel for defendants say, however, among other things: That the above cases are not applicable here because the express distinction between *school purposes and building purposes* was not preserved in § 11(c) of the present Constitution; that the present § 11(c) in itself discloses an intent (presumably of the legislature and the people) not to be bound by the prior construction; that the purpose of the 1950 amendment was to permit levy increases in *limited amounts* and for a *limited time*, without regard to *purpose*; that various statutes show a legislative construction favorable to defendants; that if "school purposes" is not construed to include "building purposes" then no levy increase for building purposes could ever be properly authorized by § 11 (c), supra; and, finally, that any other construction would introduce chaos and confusion into the administration of the school districts of Missouri. Other incidental contentions will be referred to in the opinion.

It is true, of course, that § 11(c) of Article 10 of the present Constitution makes no express distinction between levy increases for "school purposes" and "building purposes"; in fact, it does not mention "building purposes" as such, or the erection or acquisition of buildings. The 1943 Constitutional Convention and the people of Missouri originally adopted § 11(c) in a form which *specifically required a two-thirds vote* (and not to exceed a four-year term) *for any and all levy increases*. We regard this as highly material, for the form in which the section was thus adopted eliminated automatically all necessity for any distinction between "school purposes" and "building purposes." The Convention, therefore, certainly evidenced no intent to cut down the two-thirds majority theretofore uniformly required on levy increases for building purposes; and we need look no more to any intention of the convention, for it had thus performed its work and departed. The people of Missouri, by their vote, adopted the 1945 Constitution containing the all-inclusive two-thirds requirement of (original) § 11(c). If any uncertainty exists, it has arisen by reason of the amendment adopted on November 7, 1950, following the Legislative Resolution. And we pause here to say, parenthetically, that in construing the Constitution (or any amendment) the primary consideration is the understanding of the *people* at the time of its adoption, since it derives all its force as a fundamental law *from the people*. Household Finance Corp. v. Shaffner—Banc, 356 Mo. 808, 203 S.W. 2d 734, 737.

There is, of course, nothing in this record tending to demonstrate specifically the intent of the people in adopting the amendment. The statement is made in plaintiffs' briefs that in the campaign for the adoption of this amendment the people were never advised that funds so voted might be used for building purposes. That fact, if true, is outside the record, and we prefer not to risk stretching the doctrine of judicial notice that far.

We cannot agree that § 11(c) as it now exists shows, in and of itself, an intent "not to be bound by" the previous construction of the phrase "school purposes." This contention seems to be based upon the absence of any express distinction between "school purposes" and "building purposes." As previously stated, all necessity for such was eliminated when the all-inclusive requirement of a *two-thirds* vote was first adopted. But the phrase "for school purposes" was revived by the amendment of 1950; so, as of that date, we must look to its past meaning in order to determine what it was *understood* to mean upon its re-adoption. The phrase "for school purposes" had [531] been adopted by the people in 1875 as one having a fixed meaning *entirely distinct from building purposes*; and over a period of approximately seventy years this phrase, "for school purposes," had consistently been considered by the people and construed by the courts as meaning "all the usual and ordinary expenses of maintaining and operating schools" (Peter v. Kaufmann, 327 Mo. 915, 38 S.W. 2d 1062, 1066).[1] So far as we can see it makes little difference how the meaning arose; the chief point is that the words *had* a distinct meaning. Unless there is some express wording in the new § 11(c) to indicate the contrary, we think that we must consider that the words were used and adopted in the amendment in accordance with their traditional, historic and previous meaning, as acquired over this long period of years. Such is a recognized rule of constitutional construction. (Moore v. Brown— Banc, 350 Mo. 256, 165 S.W. 2d 657; Ludlow-Saylor Wire Co. v. Wollbrinck—Banc, 275 Mo, 339, 205 S.W. 196.) We find no express wording in the present section to indicate the contrary. And we note further that if the 1943 Constitutional Convenion "abolished" the phrase (as counsel argue) and distinction, which it apparently did solely because the distinction was no longer necessary, the people of Missouri *revived* the phrase by adopting the 1950 amendment when, for the first time, any distinction was made under the 1945 Constitution between a simple *majority* vote and a *two-thirds* vote; the people are presumed under these circumstances to have attached to the words their previously fixed meaning.[2] And actually the convention did not abolish the phrase "for school purposes" at all, but merely eliminated, temporarily, the necessity for it. Counsel argue, very ably, that

---

[1]We do not attribute a contrary intent to the case of St. Louis & S.F. Ry. Co. v. Gracy, 126 Mo. 472, 29 S.W. 579, in which the court was considering then existing statutes and the mechanics of collection; moreover, that opinion seems to have recognized a distinction between the phrases "for schools" and "for school purposes."

We have noted the cited case of Decker v. Diemer, 229 Mo. 296, 129 S.W. 936, which involved the application of county funds, and no question of a levy increase for any purpose. It seems apparent that school districts have long been separately considered and the case is not persuasive.

[2]On October 4, 1955, the people of Missouri also adopted, on referendum, the "State Support of Schools Bill," now § 161.021, V.A.M.S., 1955 Laws, specifically defining "School purposes" as "teacher and incidental funds."

the real purpose of the 1950 amendment was to permit a levy increase for *any* purpose by a majority vote, so long as the increase was limited to three times the usual constitutional limitation (one dollar per hundred here) and the effective period was limited to one year. But if we adopt this argument we would thereby make the phrase "for school purposes" entirely superfluous; and certainly some purpose and meaning must be given to every part of the section if such may reasonably be done. This rule seems to apply with particular emphasis to constitutional construction and to require consideration of every word and every phrase (State ex rel. Moore v. Toberman—Banc, 363 Mo. 245, 250 S.W. 2d 701; State ex rel. Russell v. State Highway Com.—Banc, 328 Mo. 942, 42 S.W. 2d 196, 203; State on inf. McKittrick v. Williams—Banc, 346 Mo. 1003, 144 S.W. 2d 98, 103). And, accordingly, a construction which renders any words or any phrase meaningless should be avoided, if possible, (id). Certainly school districts may only tax for *some* objective connected with schools, and the first clause of the section gives them ample authority to increase the rate of taxation for any and all purposes within their powers, upon a *two-thirds* vote (i.e., "In all municipalities, counties and school districts the rates * * may be increased for their *respective* purposes * *"). If this were not true then we would attribute to the Constitutional Convention of 1943 the adoption of a perfectly useless provision, for this sub-section was the only provision for increase adopted by it. We, therefore, construe the "respective purposes" of a school district as including all purposes and objectives for [532] which a school district may properly levy an increased tax, and we believe that the Constitutional Convention so intended it and the people so adopted it. The amendment was adopted to permit *some* form of increase upon a simple majority. If the phrase (of the amendment) "for school purposes" is not construed to have a limiting effect, then we think that it has no meaning whatever and is rank surplusage; and if it was inserted *for no reason,* certainly a serious mistake was made. If the phrase was not thus intended to limit the all-inclusive "respective purposes," then this part of the amendment might just as well have read: "provided in school districts the rate of taxation as herein limited may be increased[3] so that the total levy shall not exceed three times the limit herein specified and not to exceed oné year, when * * * a majority of the qualified voters * * shall vote therefor." If defendants are correct in their contentions, such wording would have been just as effective and much more simple. It seems to us rather ridiculous to imply that "for school purposes" had to be inserted to distinguish the functions of a school district from those of a county or a city; certainly a school district cannot levy county or city taxes. We conclude that this phrase was used and adopted with a restrictive

---

[3]It is at this point that the phrase "for school purposes" appears.

effect and in the light of the previous understanding and interpretation so long accorded to it. Consequently, we believe and those who concur in this opinion hold that the purposes for which a levy increase may be or is authorized under this section upon a majority vote (of less than two-thirds) do not include an increase for erecting or purchasing new buildings.

What we have already said probably answers the contention that, upon our present construction, there could be no means of increasing a levy for building purposes. We hold that there is, by means of the two-thirds vote (and other requirements) contained in the first clause of the section. It seems clear that the Convention of 1943 and the people originally intended and considered that the "respective purposes" (so used) should include both the "school purposes" and the building purposes referred to separately and specifically in the 1875 Constitution, and thus combined them, requiring a two-thirds majority for all.

Counsel for the school districts have called our attention to many statutes as supposedly evidencing a legislative intent favorable to their contentions and which, they say, should be persuasive here. It would be impossible to discuss all these statutes in detail; they cover many subjects, including annexations, the discontinuance of school districts, accounting, length of school terms, tax levies and other subjects. Many of these could in no event be specifically applicable to the districts here involved, because of population requirements. Counsel argue: (a) That in many of these sections the term "school purposes" (as in the annexation statutes) very apparently has a broader meaning than we have given the term in this opinion; and (b) that, in others (such as certain taxing statutes) there is a reference to "school purposes," but no specific reference to building purposes. The vast majority of the statutes so cited are re-enactments, either verbatim or substantially so, of statutes existing prior to the adoption of the 1945 Constitution. As to those, and on contention (a) above, we say that if the term "school purposes," as there used, be given a broader meaning, then the statutes were each and all in conflict with the 1875 Constitution where the term concededly was given an expressly limited meaning; we can hardly attribute such a meaning or construction to a whole group of statutes. Contention (b), supra, is that certain of the school taxing sections (and perhaps others) refer to "school purposes" with no reference to building purposes, and, as we understand the contention, that our construction would leave a gap, so to speak, in the authority of the districts. That does not follow, for these are not the laws upon which tax levies for building purposes depend. Under the 1939 Revised Statutes increased levies for school purposes and for building purposes were separately authorized [533] (§ § 10,358 and 10,359, RSMo 1939); with these provisions and the basic constitutional grants it would seem that there was no need for

any reference to building purposes in any of the sections referred to, prior to the adoption of the 1945 Constitution. The later statutes are discussed in the next paragraph. At most, the cited statutes may only be considered as indicative of a possible legislative intent.

Counsel also call our attention to the wording of certain statutes enacted next following the adoption of the 1945 Constitution (§ 165.080, RSMo 1949, being A. L. 1945, p. 1630) and as amended following the adoption of the 1950 Constitutional amendment (§ 165.080, V.A.M.S., 1951 Laws, pp. 469-470) ; these, it is argued, indicate that the legislature construed the present § 11(c) of Article 10 as permitting a bare majority vote to be effective for any purpose. The 1945 Act, supra, necessarily required a two-thirds majority to make effective *any* increase above the specified constitutional limit, and also required that each purpose (and the rate and period proposed therefor) be stated separately. We note also that the legislature.there *avoided* the use of the phrase ''school purposes'' (and its previously fixed meaning) and used a new phrase,—''district purposes,''—as consonant with the all-inclusive § 11(c) as it then existed prior to the amendment. The 1951 Act, supra, also requires that each purpose (and the rate and period proposed therefor) should be stated separately, and provides: ''and if the necessary majority of the qualified voters voting thereon, as required by article X, section 11 of the constitution, shall favor the proposed increase for any purpose, the result of such vote, * * * for each purpose * * * shall be certified * * *.'' The gist of the argument is that the use of the words ''for any purpose'' indicates a legislative construction to the effect that a bare majority vote is sufficient ''for any purpose.'' We do not so understand or construe the statute; counsel apparently overlook the word ''*necessary*'' appearing immediately before the word ''majority.'' We believe that the words ''*necessary majority*'' include a two-thirds majority, as well as a bare majority,[4] and that the legislature has now merely provided that when a proposal of increase (for any purpose) receives the majority *necessary or required* for that increase by the Constitution, it shall thereupon be certified and take effect. In fact a consideration generally of the legislation since 1943 confirms our views as herein expressed. In school districts of 75,000 to 500,000 population, levy increases for ''school purposes'' (sic) and building purposes are still covered in separate sections of the Statutes (§ § 165.487 and 165.490, RSMo 1949, V.A.M.S.). Section 161.040, RSMo 1949, V.A.M.S., which was last re-enacted in 1947, deals with the apportionment of the state public school fund, and provides in part that: ''When any district has legally levied for school purposes (teachers' wages and incidental expenses) a tax rate not less than the constitutional limit * * *'' it shall receive certain allotments. We do not say that this is an all-inclusive constitutional defini-

---

[4]And see the phrase "two-thirds majority" as used in Peter v. Kaufmann, 327 Mo. 915, 38 S.W. 2d 1062, l. c. 1066.

tion of school purposes, but it most certainly indicates a *restrictive* use of the term. In the 1955 legislative session Senate Bill No. 3, the so-called "State Support of Schools" bill, was enacted subject to referendum. It was approved by the people on October 4, 1955. In its first section, now § 161.021, V.A.M.S., 1955 Laws, it specifically defines "School purposes" as "teacher and incidental funds." If, however, we should be controlled here by apparent legislative intent as supposedly indicated in literally scores of sections of the statutes, we might well find ourselves wandering in a labyrinth from which there is no return. Certainly the people, in adopting the 1950 constitutional amendment could not have known of, understood and interpreted the various and sundry statutes. But they did know that school districts had never been permitted, in fact, to increase levies for building purposes by less than a two-thirds vote.

 [534] We do recognize the doctrine that constructions placed upon the Constitution and statutes by the legislature or public officers charged with their execution are persuasive and entitled to weight, where the meaning is doubtful (Folk v. City of St. Louis, 250 Mo. 116, 157 S.W. 71, l.c. 76; Gantt v. Brown, 244 Mo. 271, 149 S.W. 644, l.c. 646). But such constructions are not in any event binding on the courts; such is especially true if the supposed legislative construction is not clear. Here we think that the weight of legislative construction supports the views herein stated. And the principle is not applicable if the provision being construed is not ambiguous.

It is insisted that the administrative interpretations of the Department of Education, as given to various school districts, should be highly persuasive. In the first place there is no evidence of any such interpretations in the transcript of either of the consolidated cases, and counsel have injected the matter into the cases extraneously, largely upon the rehearing. But even so, while it may be the duty of the Commissioner of Education to "advise * * school district officers * on all matters pertaining to the school law" (§ 160.100, RSMo 1949, V.A.M.S.) this injunction certainly does not mean that he shall construe the Constitution of Missouri; this court will not, and should not, be controlled in its constitutional construction by the mere expediencies of a situation created in part by any such advice. We refer not to the Commissioner personally, but to the department as a whole, and the sources of any legal advice which may have been given.

 It has also been suggested that the words "public school purposes" as used in § 5, Article 9 of the 1945 Constitution have a broader meaning than we have given to the words "school purposes" here, since that section provides for using the income of the fund there in question for "establishing and maintaining" free public schools; and it is further argued that the construction of the words in the two articles should be harmonious. We must consider each of the respective phrases in the full context in which it is used. Section 5 of Article

544

9 is dealing with and setting apart the "Public School Fund" consisting of "moneys, bonds, lands, and other property belonging to or donated to any state fund for public school purposes." It has no reference whatever to taxation. The Constitution distinguishes between the various funds held by the state, according to the purpose for which each fund was respectively created. One such fund is the "Public School Fund." The words "belonging to or donated to any state fund for public school purposes," merely serve to set apart such money, property, etc., from all money or property belonging to or donated to any other state fund. The income from this fund, together with such moneys as are appropriated by the legislature, is applied to the support of the public schools (§ 3(a), Art. 9, Constitution, 1945), and this combined fund is designated as the "State School Moneys Fund" (§ 161.225, RSMo 1949, V.A.M.S.). A wholly different source of support for the schools is the method of *local taxation* provided by Article 10 of the Constitution. When thus considered, we see that the phrases are used in wholly different contexts in the two articles; the use in Article 9 of the words "*public* school purposes" (note the slight but perhaps immaterial difference) should not be controlling or even persuasive in construing Article 10 dealing solely with *taxation,* where a specific use and interpretation of the term "school purposes" has been recognized over a long period of years. In Article 9 there was no reason to differentiate between any different purposes concerning schools, whereas under Article 10, as we say, a distinction had long been recognized for purposes of local taxation. Section 161.040, RSMo 1949, V.A.M.S., is a statute implementing § 5, Article 9, supra, and the legislature (if such interpretation be of any significance) therein used the words "levied for school purposes (teachers' wages and incidental expenses)." We note also that the term "School Purposes" is used in the title of § 3(b) of Article 9, which section specifically refers merely to the *support* of the schools,—not to building or establishing [535] schools. Our construction is more harmonious with that use of the term than is the construction now contended for of § 5 of the same Article. Everything considered, we think little is to be gained by any comparison of the words actually involved with other words and terms appearing outside of the particular article now in question.

In view of the foregoing, we have determined that the levy increase in question was void and unenforceable. We believe that the taxpayers of Missouri have long recognized the distinction between the majorities required for tax increases for school operating purposes and for acquiring school sites and buildings. As a practical matter, an increase may always be voted for any purpose by a two-thirds majority.

No thinking person considers lightly the needs of our public schools, both in operations and for buildings. But the framers of our

fundamental law, and the people in adopting it, have seen fit to affix sundry restrictions on the taxing powers of local bodies which might perchance, become over-zealous. The tax-paying citizens of Missouri are entitled to the measure of protection afforded by those restrictions. This court has the final responsibility of construing and enforcing those provisions, and in this opinion we only seek to carry out that responsibility. We cannot compromise our interpretation of the fundamental law to meet some immediate need. The mere fact that a two-thirds majority was not obtained in either of these instances indicates, perhaps, considerable doubt on the specific propositions involved, and the wisdom of such permanent, over-all limitation.

The issues here have not involved any questions of maintenance, ordinary repairs, or the purchase of equipment or furnishings. In this respect, the majority opinion heretofore filed may have been misunderstood. Nor does the present case in any way involve or affect the power of a school district to incur indebtedness under § § 26(b) and 26(f) of Article 6 of the Constitution and the statutes enacted pursuant thereto.

The foregoing represents the views of the writer and of those who concur in this opinion. We, therefore, respectfully dissent from the opinion of the majority.

*Westhues, J.,* and *Ruark, Special J.,* concur in the foregoing dissenting opinion.